MISSOULA TRUST & SAVINGS BANK ET AL., RESPOND-
ENTS, *v.* NORTHERN PACIFIC RAILWAY CO. ET AL.,
APPELLANTS.

(No. 5,877.)

(Submitted March 23, 1926.   Decided April 17, 1926.)

[245 Pac. 949.]

*Railroads—Fire Set by Locomotive—Complaint—Evidence—*
*Spark-arresters—Proper Installation—Nonliability for Fire*
*Damage—Instructions.*

Statutes—Constitutionality—When Supreme Court will not Determine
Question.
  1.  The constitutionality of a statute will not be considered on
  appeal unless a decision on its validity is necessary to the deter-
  mination of the cause.
Railroads—Fire Set by Locomotive—Pleading and Proof.
  2.  Where plaintiff in an action against a railway company for
  damages from fire set by sparks from a locomotive bases his ac-
  tion on the failure of the company to comply with the provision
  of section 6597, Revised Codes of 1921, to plow a fire-guard on
  each side of its track where it passes through range or grazing
  country, he must allege in his complaint that the property burned
  was situated in a "range or grazing country"; failure to so allege
  renders testimony relating to a breach of its provisions inadmis-
  sible and instructions relating thereto improper.
Same—Fire Set by Locomotive—What Deemed Sufficient Proof.
  3.  Where a fire is discovered in close proximity to a railway
  company's right of way soon after an engine has passed, with the
  wind blowing in the direction of the burned property, and no
  other cause of the fire appears, such showing is sufficient to
  warrant a jury in finding that the fire was started by the engine.
Appeal and Error—Insufficiency of Evidence—Burden on Appellant.
  4.  The burden of showing insufficiency of the evidence to war-
  rant the trial court in submitting the case to the jury is upon
  appellant.
Railroads—Fire Set by Locomotive—Negligence—*Prima Facie* Evidence.
  5.  Proof of the starting of a fire by a locomotive engine and re-
  sulting damage is *prima facie* evidence of negligence.
Same—Fire Set by Locomotive—Evidence—Admissibility.
  6.  In an action against a railway company to recover damages
  from fire resulting from sparks emitted by a locomotive, plaintiff
  may introduce testimony showing the emission of sparks from other
  engines of the defendant company and that fires resulted therefrom,

1.  See 6 R. C. L. 76.
3.  See 11 R. C. L. 995.
4.  See 2 R. C. L. 220.
6.  See 11 R. C. L. 996.

without showing that such engines were under the charge of the
same engineer or were of the same construction as the one occa-
sioning the damage.

Same—Exhibits—When Improperly Admitted.

7. Exhibits in the shape of cinders and clinkers picked up along
defendant's track, without any showing as to how they came to be
at the places where they were found, were immaterial and their
admission in evidence was error.

Same—Spark-arresters—Failure to Install—Negligence *Per Se.*

8. Violation of the provisions of section 6600, Revised Codes of
1921, making it the duty of railway companies to equip their coal
burning locomotives with approved spark-arresters, is negligence
*per se.*

Same—Where Proper Spark-arresters Installed, Company not Liable for
Fire Damage.

9. In the absence of statute imposing upon railway companies
an absolute liability on account of fires set by the operation of
trains, where it is made to appear that the engine which set the fire
was equipped with the best known and approved spark-arresters then
in common use, kept in proper and workable condition, there is no
liability unless defendant was negligent in other particulars, and
refusal of an instruction to that effect was error.

---

[1] Constitutional Law, 12 **C. J.**, sec. 212, p. 780, n. 98.
[2] Grazing Country, 28 **C. J.**, p. 825, n. 45 New; Pleading, 31
**Cyc.**, p. 115, n. 41; p. 674, n. 34; Railroads, 33 **Cyc.**, p. 1340, n. 26;
p. 1354, n. 9 New; p. 1381, n. 63 New; Range, 33 **Cyc.**, p. 1410, n. 51;
Range Country, 33 **Cyc.**, p. 1410, n. 51.
[3] Railroads, 33 **Cyc.**, p. 1382, n. 72; p. 1383, n. 74; p. 1384, n. 79.
[4] Appeal and Error, 4 **C. J.**, sec. 2662, p. 733, n. 87.
[5] Railroads, 33 **Cyc.**, p. 1361, n. 38; p. 1362, n. 39; Trial, 38 **Cyc.**,
p. 1578, n. 37.
[6] Railroads, 33 **Cyc.**, p. 1371, n. 99; p. 1373, n. 6.
[7] Railroads, 33 **Cyc.**, p. 1368, n. 79.
[8, 9] Railroads, 33 **Cyc.**, p. 1333, n. 96; p. 1335, n. 9; p. 1398, n. 55.

Action by the Missoula Trust & Savings Bank and another
against the Northern Pacific Railway Company and another.
Judgment for plaintiffs, and defendants appeal. Reversed and
remanded, with direction to grant a new trial.

*Mr. Howard Toole* and *Messrs. Gunn, Rasch & Hall,* for
Appellants, submitted a brief; *Mr. E. M. Hall* argued the
cause orally.

Necessity of Alleging and Proving Negligence: Liability for
fire damage resulting from the operation of the engines of a
railroad company is in some jurisdictions made absolute by

---

8. Action for violation of statute requiring spark-arresters, see
note in **L. R. A.** 1915E, 539.

statute and in those jurisdiction the question of the railroad's negligence is immaterial and the plaintiff is only required to prove that the company's engines started the fire. Other states have statutes making the starting of a fire by sparks from a locomotive *prima facie* evidence of negligence. In those jurisdictions after the plaintiff has proven the origin of the fire the burden is upon the defendant to overcome the presumption of negligence. (Elliott on Railroads, 3d ed., secs. 1746, 1748, 1766 and 1769.) Many other states have no statutes of either class mentioned above. Montana is one of those states. The only statute in Montana is set forth in sections 6600 and 6601, Revised Codes, requiring engines to be equipped with approved and suitable spark-arresters in proper and workable condition, and making the violation of the statute a misdemeanor. The rule in such states, including Montana, is set forth in sections 1745 and 1748, *Id.*, and is to the effect that the burden of proof is on the plaintiff to prove, first, that the fire was started from sparks or fire from the locomotive of the defendant, and second, that the same was due to the negligence charged against the defendant. (33 Cyc. 1332–1335; *Garret* v. *Southern Ry. Co.*, 101 Fed. 102, 49 L. R. A. 645, 41 C. C. A. 237; *Louisville & N. R. Co.* v. *Bell*, 206 Fed. 395, 124 C. C. A. 277; *Louisville & N. R. Co.* v. *Reese*, 85 Ala. 497, 7 Am. St. Rep. 66, 5 South. 283; *Viera* v. *Atchison etc. R. Co.*, 10 Cal. App. 267, 101 Pac. 690; *Burroughs* v. *Housatonic R. Co.*, 15 Conn. 124, 38 Am. Dec. 72; *Jefferies* v. *Philadelphia etc. R. Co.*, 3 Houst. (Del.) 447; *Baltimore etc. R. Co.* v. *O'Brien*, 38 Ind. App. 143, 77 N. E. 1131; *Meyer* v. *Vicksburg etc. R. Co.*, 41 La. Ann. 639, 17 Am. St. Rep. 408, 6 South. 218; *Lowney* v. *New Brunswick etc. R. Co.*, 78 Me. 479, 7 Atl. 381; *Byers* v. *Baltimore etc. R. Co.*, 222 Pa. 547, 72 Atl. 245; *Bernard* v. *Richmond etc. R. Co.*, 85 Va. 792, 17 Am. St. Rep. 103, 8 S. E. 785; *White* v. *New York Central etc. R. Co.*, 181 N. Y. 577, 74 N. E. 1126, affirming 90 App. Div. 356, 85 N. Y. Supp. 497.)

Fire Guards: We contend that there was no duty on the defendant railway company to plow six-foot fire guard and burn fifty-foot strip through private lands, for the reason that said law is unconstitutional and violates section 14, Article III of the Constitution of Montana. Sections 6597 and 6598, Revised Codes, are all of an Act passed in 1901 (Laws 1901, p. 163), as amended by Chapter 63, Laws of 1903, and no provision is therein made for compensation to the owner for damage to property plowed up and burned over in complying with the provisions of said Act. The sole purpose of this law was to protect the public from possible fire spreading from along the right of way. Therefore, to take private property for such a public use, without providing for compensation to the owner, violates this constitutional provision. (*Vreeland* v. *Forest Park Reservation Commission,* 82 N. J. Eq. 349, Ann. Cas. 1915B, 1153, 46 L. R. A. (n. s.) 1062, 87 Atl. 435; *People* v. *Calder,* 89 App. Div. 503, 85 N. Y. Supp. 1015; *Eby* v. *City of Lewistown,* 55 Mont. 113, 173 Pac. 1163.)

Evidence of Other Fires: Where the complaint describes and identifies a particular engine as causing the fire, the condition of that engine and its management are all that are to be considered, and evidence as to the construction and operation of other engines is inadmissible. (33 Cyc. 1357 and 1374, to 1376; Elliott on Railroads, sec. 1768.) In such cases, where the engine is identified, evidence is generally inadmissible that other engines had set fire or emitted sparks or been carelessly managed, even though such other engine had the same kind of appliances as the engine in question. (33 Cyc. 1376; *Pure Oil Co.* v. *Chicago M. & St. P. Ry.,* 56 Mont. 266, 185 Pac. 150; *Inman & Co.* v. *Elberton etc. Ry. Co.,* 90 Ga. 663, 35 Am. St. Rep. 237, 16 S. E. 958; *Atchison etc. Ry.* v. *Osborn,* 58 Kan. 768, 51 Pac. 286; *Shelly* v. *Philadelphia etc. Ry.,* 211 Pa. 160, 60 Atl. 581; *Payne* v. *Hargrove,* 206 Ala. 69, 89 South. 166; *Texas etc. Ry.* v. *Hartford Fire Ins. Co.,* 230 Fed. 801, 145 C. C. A. 111; *Bradley* v. *Chicago etc. Ry.,* 90 Neb. 28, 132

76 Mont.] Missoula etc. Bk. *v.* Northern Pac. Ry. Co. 205

[76 Mont. 201.]

N. W. 725; *Chandler* v. *Rutland Ry.*, 140 App. Div. 68, 124 N. Y. Supp. 1046.)

*Mr. Elmer E. Hershey* and *Mr. S. G. Skulason*, for Respondents, submitted a brief; *Mr. Hershey* argued the cause orally.

Appellants contend that the plaintiffs failed to prove negligence. As to what is proof of negligence, in cases of this character, has been well settled in Montana ever since the decision in the case of *Diamond* v. *Northern Pac. R. Co.*, 6 Mont. 580, 13 Pac. 367. It is our contention that the rule there adopted is that proof of injury, in cases like this, raises a presumption of negligence. This is the rule in most of the states. Jurisdictions not agreeing with this rule require some additional proof, such as proof of other fires at or near the same place under the same or very similar conditions caused by engines uniformly equipped. The facts proven in this case, are amply sufficient to satisfy both of the rules above mentioned,

We cite the following cases on the question of the sufficiency of the evidence to go to the jury in this kind of a case under similar circumstances: *Marron* v. *Great Northern Ry. Co.*, 46 Mont. 593, 129 Pac. 1055; *Stockdale* v. *Midland Valley R. Co.*, 113 Kan. 635, 215 Pac. 1021; *Kansas City, Ft. S. & M. R. Co.* v. *Perry*, 65 Kan. 792, 70 Pac. 876; *Kansas City, Ft. S. & M. R. Co.* v. *B. F. Blaker & Co.* 68 Kan. 244, 75 Pac. 71; *Illinois Central R. Co.* v. *Scheible*, 162 Ky. 469, 172 S. W. 910; *Missouri & N. A. R. Co.* v. *Phillips*, 97 Ark. 54, 133 S. W. 191; *McKee* v. *Chicago B. & Q. R. Co.*, 93 Neb. 294, 140 N. W. 145; *Goodman* v. *Lehigh Valley R. Co. of New Jersey*, 78 N. J. L. 137, 74 Atl. 519; *Canadian Northern R. Co.* v. *Olson*, 201 Fed. 859, 120 C. C. A. 197; *Gulf, C. & S. F. Ry. Co.* v. *Curry* (Tex. Civ. App.), 135 S. W. 592; *McCullen* v. *Chicago & N. W. Ry. Co.*, 101 Fed. 66, 49 L. R. A. 642, 41 C. C. A. 365; *Sappington* v. *Missouri Pacific R. Co.*, 14 Mo. App. 86.

MR. JUSTICE STARK delivered the opinion of the court.

Plaintiffs brought this action to recover from the defendants the value of certain buildings and personal property contained in and about them, including a straw stack, located on what is known as the Bandmann ranch, which it is alleged were burned on July 13, 1924, by fire communicated to them from an engine which was hauling a west-bound freight train of the defendant company in charge of the defendant Deering as engineer.

The complaint charges that the defendants were negligent in three particulars, viz.: (1) Careless and negligent management of the defendant company's train; (2) failure to employ suitable means to prevent the escape of fire from the coal-burning steam-engines hauling its train; (3) failure to plow fire-guards along its right of way between it and the burned property, as required by section 6597, Revised Codes of 1921. The defendants by answer admitted the formal allegations of the complaint, but denied all of the charges of negligence. The plaintiff recovered judgment in the lower court. Defendants moved for a new trial, which was denied, and they have appealed from the judgment.

The Bandmann ranch is located along the main line of the defendant railway company about 1¾ miles west of Bonner station, and about —— miles east of Missoula. Passing west from Bonner the railway crosses a bridge over the Missoula River, which is located about one-half mile east from the buildings which were burned. Through this territory the defendant railway company's system is double-tracked, and runs almost due east and west. The west-bound main line track is farthest north, and the east-bound main line track is immediately south of it, the distance from center to center of the two being 13 feet. Just south of these tracks and parallel therewith is the main line of the Chicago, Milwaukee & St. Paul Railway. From the center of the east-bound Northern Pacific main line track to the center of the Milwaukee main line track the distance is 16 2/10 feet, and the south line of the Northern

Pacific right of way is midway between the two tracks last mentioned. The south boundary line of the Milwaukee right of way, marked by a barbed wire fence, is about 85 feet south of the center of its main line track. The distance from the center of the west-bound Northern Pacific main line track to the south boundary line of the Milwaukee right of way is approximately 116 feet. The burned buildings and straw stack were located between 250 and 290 feet south of the center line of the Northern Pacific west-bound main line track.

1. Over the objections of the defendants the court permitted testimony to be introduced tending to show that the defendant railway company had not complied with the requirements of section 6597, Revised Codes 1921, and over like objections instructed the jury with reference to the provisions of such section, and in effect told them that if they believed from the evidence that the defendant company had not complied with its provisions, then it was liable for damages caused by such failure. So far as necessary for our present consideration, that section provides: "Every railroad corporation operating its lines of road, or any part thereof, within this state, shall, between the fifteenth day of April and the first day of July in the year 1903, and each succeeding year thereafter, plough in a good and workmanlike manner, covering the sod well, upon each side of its line of road wherever it passes through a range or grazing country, a continuous strip of not less than six feet in width on each side of its track, as a fire guard," *etc.*

By several specifications of error based on the above-mentioned objections, defendants seek to question the constitutionality of section 6597. It is not necessary, however, to concern [1] ourselves with that subject, for it is only when a decision on the validity of a statute is necessary to the determination of the cause that its constitutionality will be considered. (*State* v. *Rocky Mountain Elevator Co.,* 52 Mont. 487, 158 Pac. 818; *Potter* v. *Furnish,* 46 Mont. 391, 128 Pac. 542.) [2] Under the pleading and proof in this case that statute could have no possible application. To make a violation of its

requirements the basis of an action for damages resulting from its breach it would be essential that the pleading and proof bring it clearly within its provisions.  The case is analogous to one based on the failure of a railway company to fence its right of way so as to prevent livestock from getting on to its tracks.  The rule of pleading in such instance is well illustrated in the case of *Cecil* v. *Pacific R. Co.,* 47 Mo. 246, where the statute under consideration required the defendant company to fence only "inclosed or cultivated fields or uninclosed prairie lands," and it was held that a complaint thereon should aver that the injury occurred at a point where the defendant's road passed through "inclosed and cultivated fields and uninclosed prairie lands," and that these lands were not fenced, etc.  (See, also, *Beaudin* v. *Oregon Short Line R. Co.,* 31 Mont. 238, 78 Pac. 303; *Metlen* v. *Oregon Short Line R. Co.,* 33 Mont. 45, 81 Pac. 737; 17 Ency. Plead. & Prac., p. 577.)  Here the complaint contains no allegation that the Bandmann ranch is in a "range or grazing country."

The testimony showed that the burned buildings and straw stack were located in an inclosed field, which constituted a portion of the ranch lying south of the railway company's tracks, and in reference thereto the plaintiff Bandmann testified; "The land on the south side which has been cultivated was last cultivated between eight and ten years ago, but it was never cultivated up to the right of way fence.  There are, however, a few acres on the south side that have been cultivated, but it was grazing land for the year 1924."  The last statement, "but it was grazing land for the year 1924," is the only one in the entire testimony on which counsel for plaintiffs could possibly predicate an argument that the land embraced in the Bandmann ranch falls within the provisions of section 6597.  And on slight consideration the most that can be said of that statement is it indicates that the particular inclosure mentioned was used as pasture or grazing land for 1924.

The expression, "range or grazing country," has a generally accepted and understood meaning in this state which is more

readily described than defined. Speaking of the word "range," the Century Dictionary characterizes it as "a tract or district of land within which domestic animals in large numbers range for subsistence; an extensive grazing ground; used on the great plains of the United States for a tract commonly of many square miles, occupied by one or by different proprietors and distinctively called a stock—cattle or sheep—range," and says: "The animals on a range are usually left to take care of themselves during the whole year without shelter except when periodically gathered in a 'roundup' for counting and selection and for branding when the herds of several proprietors run together." "Range country" and "grazing country" are synonymous expressions.

While the foregoing is not intended as a comprehensive definition or description of them, it is sufficient to demonstrate that the above-quoted testimony wholly fails to show that the premises in question in this case, through which the railroad of the defendant company passes, are in "a range or grazing country."

From these considerations it follows that all the testimony introduced for the purpose of establishing a breach of the provisions of section 6597 by the defendant railway company, was erroneously admitted, and that the court should not have given any instructions based thereon. It is apparent that the errors in admitting this testimony and giving these instructions was prejudicial, for, from aught that we know, the jury's finding against the defendants may have been based thereon.

2. It is next contended by the defendants that the evidence was not sufficient to warrant the court in submitting the case to the jury. This matter was raised at the close of all the evidence by motion for a directed verdict, and the denial of this motion was made one of the grounds of defendants' motion for a new trial. The same matter was also suggested in the defendants' objections to plaintiff's offered instruction No. 3, given by the court.

It is not claimed that there was any direct testimony showing that the fire was set out by sparks or cinders that came from

76 Mont.—14

the defendant railway company's engine, but this fact could be established by indirect or circumstantial evidence, and it is **[3]** very generally held that when a fire is discovered in close proximity to a railway company's right of way soon after an engine has passed, with the wind blowing in the direction of the burned property, and no other cause for the fire appears, such circumstances are sufficient to warrant a jury in finding that the fire was started by the engine. (*Marron* v. *Great Northern Ry. Co.*, 46 Mont. 593, 129 Pac. 1055; *Stockdale* v. *Midland Valley R. Co.*, 113 Kan. 635, 215 Pac. 1021; *Missouri & N. A. R. Co.* v. *Phillips*, 97 Ark. 54, 133 S. W. 191; *Railroad Co.* v. *Perry*, 65 Kan. 729, 70 Pac. 876; *Goodman* v. *Lehigh Valley R. Co.*, 78 N. J. L., 137; 74 Atl. 519.) Under this rule we are of opinion that plaintiffs introduced sufficient evidence to warrant a finding that the engine of the defendant company did set out a fire on the Bandmann place at the time in question.

In view of the fact that the case must be sent back for a new trial we shall not further discuss the evidence, except to state that the showing that the fire, which is alleged to have started at a point about 120 feet south of the track on which the engine in question passed, and about 500 feet east of the destroyed property, extended down to the scene of the conflagration, is very weak and unsatisfactory. The witnesses, apparently testifying with reference to the plat introduced in evidence, and which has been certified in this court, made reference to a siphon, fences, a "hog back," and a depression in the surface of the land which were not designated thereon, and indicated different points to which they made reference as "here" and "there," making it impossible for one who did not hear the testimony to follow it and gain its full significance.

The burden of showing the insufficiency of the evidence to **[4]** justify the finding of the jury on this point, so as to require a reversal on that ground, was upon the defendants (*Wherry* v. *Sprinkle*, 50 Mont. 191, 146 Pac. 735; *Lindeberg* v. *Howe*, 67 Mont. 195, 215 Pac. 230), and they did not sustain this burden.

But counsel for defendants say that, even though it be con-
[5]   ceded that the proof was sufficient to warrant a finding that
the fire was started by sparks and cinders from the defendant
railway company's engine and that it spread and was com-
municated to the burned property, there was no proof of the
negligence charged in the complaint, and hence the motion for
a directed verdict should have been sustained for that reason.

In many states, by express statutory enactment, proof of
the starting of a fire by a locomotive engine and resulting
damage is declared to be *prima facie* evidence of negligence;
but there is no such statute in this state. In the absence of
such a statute there is much diversity of judicial opinion as
to whether such proof is sufficient. In the early case of *Dia-
mond* v. *Northern Pacific Ry. Co.,* 6 Mont. 580, 13 Pac. 367,
this court announced that it was. Although a decision in that
case did not require such a declaration and consequently it
was *obiter dictum,* an examination of the many cases has con-
vinced us that the statement there made is in harmony with
the weight of authority, the trend of modern decision, as well
as the better reasoning, and we now adopt it as the rule for
our decision in this case.

We have not thought it necessary to make a specific reference
to the numerous authorities consulted, but those interested will
find them cited in notes to the following decisions, where they
appear in the collected cases: *Burroughs* v. *Housatonic R. Co.,*
15 Conn. 124, 38 Am. Dec. 72; *Ohio, etc., Rd. Co.* v. *Shanefelt,*
47 Ill. 497, 95 Am. Dec. 509; *Ward* v. *Cobb,* 148 Mass. 518, 12
Am. St. Rep. 590, 20 N. E. 174; *Inman* v. *Elberton Air-Line
R. Co.,* 90 Ga. 663, 35 Am. St. Rep. 237, 16 S. E. 958; *Childs*
v. *Lanterman,* 103 Cal. 387, 42 Am. St. Rep. 124, 37 Pac. 382;
*Barnowsky* v. *Helson,* 89 Mich. 523, 15 L. R. A. 40, 50 N. W.
989; *King* v. *Oregon Short Line R. Co.,* 6 Idaho, 306, 59 L. R. A.
236, 55 Pac. 665; *Atchison, Topeka, etc., R. Co.* v. *Geiser,* 68
Kan. 281, 1 Ann. Cas. 815, 75 Pac. 68; *Northwestern Mut. Fire
Assn.* v. *Northern Pac. Ry. Co.,* 68 Wash. 292, Ann. Cas. 1913E,
971, 123 Pac. 468; 3 Elliott on Railroads, 3d ed., sec. 1766;

11 R. C. L., p. 987, sec. 41; 6 Thompson on Negligence, sec. 2285.

We therefore conclude that the court did not err either in overruling the defendants' motion for a directed verdict or in giving plaintiffs' offered instruction No. 3.

**3.** On her direct examination in chief, over the objection of **[6]** the defendants, plaintiff Bandmann was permitted to testify that there had been many fires on the right of way of the defendant company in the vicinity of this ranch within a short time prior to July 13, 1924, and in rebuttal, over like objections, the same witness and others were permitted to testify that since 1920 down to July 13, 1924, engines of the defendant company, hauling both freight and passenger trains, going both east and west, in passing through the Bandmann ranch, had thrown out showers of sparks and fire, and error is predicated upon the admission of this evidence.

Although the authorities are divided on the question presented by these objections, it was held in *Diamond* v. *Northern Pacific Ry. Co., supra*, that in actions of this character it is competent for a plaintiff to show the emission of sparks or ignited matter from other engines of the defendant company and that fires resulted therefrom without showing that they were under the charge of the same engineer or were of the same construction as the one occasioning the damage. Under the rule thus announced, there was no error in admitting this testimony.

**4.** During the progress of the trial, which was just about one **[7]** year after the fire occurred, certain witnesses went to the Bandmann ranch and gathered several small boxes of cinders and clinkers along the tracks of the defendant railway company, and these were introduced in evidence as Plaintiffs' Exhibits 3, 4, 5, and 6, over the defendants' objections. Plaintiffs made no effort to show how, when, or why these articles got at the places where they were found; whether they were dumped from an engine or hauled there as ballast. Under the circumstances, these exhibits were wholly immaterial and irrelevant to any issue being tried, and the objections to their introduction should have been sustained.

5. By their offered instruction D2 the defendants requested [8,9] the court to instruct the jury in effect that if they believed from the evidence that the engine which set out the fire was equipped with the best known and approved appliances in general use for preventing the escape of sparks or. fire from steam locomotives, and that the same were in good repair at the time, and that the employees of the defendant company in charge of the engine and appliances were using ordinary care in the operation thereof, the defendants were not liable.

Section 6600, Revised Codes of 1921, provides: "All persons or corporations using coal-burning locomotives * * * shall equip and keep the same in proper and workmanlike condition with approved and suitable spark arresters, so as to prevent the escape of sparks liable to communicate fire." And by section 6601 failure to comply with this statute is made a misdemeanor. A violation of its provisions, with consequent damage, would amount to negligence *per se*. (*Osterholm* v. *Boston & Montana, etc. Co.*, 40 Mont. 508, 107 Pac. .499; *Melville* v. *Butte-Balaklava Copper Co.*, 47 Mont. 1, 130 Pac. 441.)

Since there is no statute in force in this state imposing upon a railway company an absolute liability on account of fires set by it in the operation of its trains, if it is made to appear to the satisfaction of the jury that the engine which set the fire was equipped with the best known and approved spark-arresters then in common use, suitable to prevent the escape of sparks liable to communicate fire, and that the same were kept in proper and workable condition, then there is no liability, unless it is alleged and proved that there has been negligence in other particulars. (3 Elliott on Railroads, sec. 1748; 11 R. C. L., p. 966, sec. 21; 33 Cyc. 1335.)

The record does not disclose what objection was interposed to the giving of the proposed instruction D2. One embodying the principle therein announced should have been given. If upon the retrial of this action a similar instruction should be offered, it is suggested that it follow the wording of the above-quoted statute.

For the reasons above indicated, the judgment is reversed and the cause remanded to the district court, with direction to grant the defendants a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.